B. Haynes, Liquidator, *v.* John A. Harbour—Gordon A. Smith, Warrantor.

14 237
44 207
14 237
46 1164
14 237
f116 509

The property banks in Louisiana furnish an exception to the rule, that the creditor who holds under two mortgages of unequal rank on the same property, and who has caused the property to be sold to satisfy his junior mortgage, cannot be allowed to sell it a second time to satisfy his senior mortgage. The property mortgaged for the subscription to the stock of the bank is liable in the hands of a third possessor, although it has been previously sold at the instance of the bank, to enforce the payment of the stock loan secured by the same mortgage.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff*, J. *J. McVea*, for plaintiff. *J. O. Fuqua*, for defendant. *U. B. & E. Phillips* and *Hardesty & Kernan*, for warrantor and appellant.

Buchanan, J. This is an hypothecary action against a third possessor of land mortgaged to the Clinton and Port Hudson Railroad Co., for the security of 202 shares of the capital stock of said company, subscribed by *Thomas A. Cabarras & Co.*, and for the repayment of such loans as should be made upon the said stock. The mortgage was dated 30th November, 1835.

*T. A. Cabarras & Co.* borrowed upon this stock of the company, on the 17th February, 1838, the sum of nine thousand and ninety dollars.

This loan was not paid at maturity nor renewed, and the commissioners of liquidation of the company caused executory process to be issued for the amount of the loan upon the mortgage, under which the land now in possession of defendant was seized, and on the 2d September, 1843, was sold by the Sheriff to *Gordon Smith* for eight thousand dollars cash.

This sale was made subject to the liens and mortgages of whatever kind they might be, contained in the certificate of mortgages produced at the sale.

In March, 1852, this court affirmed a judgment of the District Court of East Feliciana, which decreed that the liquidator of the Clinton and Port Hudson Railroad Co. should proceed to collect of the several stockholders, such contribution upon their subscriptions of stock, as should be necessary to meet certain outstanding bonds of the company, held by the New Orleans Gas-light Co. and others. See case reported in 7th An. 114.

On the 18th October, 1852, *Gordon Smith* sold to defendant, *John A. Harbour*, the land which the former had purchased at Sheriff's sale as aforesaid ; the parties to this conveyance consenting to waive the production of a certificate of mortgages by the notary, and the vendor warranting the vendee specially against the Clinton and Port Hudson Railroad and Banking Co. This sale was made for the price of three thousand dollars ; $1000 in an acceptance due 1st January, 1854, $1000 in a note due 1st January, 1855, and $1000 in a note due 1st January, 1856. The acceptance was paid at maturity—the notes are still unpaid.

In compliance with the decree above mentioned the liquidator made a call of three-fifths of the stock ; and in April, 1854, instituted this action for three-fifths of the stock subscribed by *T. A. Cabarras & Co.*, alleging *John A. Harbour* to be in possession of the land mortgaged to secure said stock, and prayed that *Harbour* might be cited, and the land sold to pay the sum of twelve thousand one hundred and twenty dollars, being three-fifths of the amount of *Cabarras & Co.'s* subscription.

*Harbour* answered, admitting his possession of the mortgaged premises; alleged his purchase from *Smith*, his payment of one thousand dollars on account of said purchase, and that he had made valuable improvements on the land—cited his vendor, *Gordon A. Smith*, in warranty, and, in case of eviction, prayed for judgment against his warrantor for restitution of the money paid and notes unpaid, and for five thousand dollars additional, being the alleged value of defendant's improvements.

The warrantor, *Smith*, pleads the general issue, admits the sale to *Harbour*, avers that he purchased in good faith at a sale made at the instance of plaintiff for $8000, which he paid in obligations of the company, worth at the time of payment sixty cents in the dollar; prays that the demands of plaintiff and defendant be rejected, and, in the alternative, that he be replaced in the condition he was in before his purchase at Sheriff's sale, crediting upon plaintiff's demand the amount paid by warrantor for the property.

The case was tried by a jury, who found for plaintiff against defendant, and for defendant against *Smith*, warrantor, for two thousand dollars improvements, for one thousand dollars draft paid, and for the return of the two notes of defendant unpaid. Judgment having been rendered upon this verdict, the warrantor appealed after vainly seeking a new trial.

The appellant urges, as against the plaintiff, that the creditor who holds two mortgages of unequal rank on the same property, and who has caused the property to be sold to satisfy his junior mortgage, cannot be allowed to sell it a second time to satisfy his senior mortgage. This, as a general proposition, is true. But these property banks as they are called, of which so many were chartered by the State of Louisiana about twenty or thirty years ago, and of which the Clinton and Port Hudson Railroad and Banking Co. was one, furnish an exception to the rule, which results from their peculiar organization.

The capital upon which those banks did business was the price of bonds sold in the market, which were secured by mortgage of the property of the individual stockholders. It was confidently expected, that the profits of their business would enable those banks to pay their bonds in full at maturity, without calling upon the stockholders for contribution. The subscriptions to the stock were not payable in cash but in an hypothecation of the subscribers' land or slaves, to the amount of the subscription. The lure held out to proprietors of lands and slaves to encumber their property in this manner consisted in a credit of fifty per cent. upon their stock, to which they were entitled in the shape of loans, of which the capital was reimbursable in a long series of years. In order to secure the bank against loss upon such loans, the mortgage given by the stockholder at the time of subscribing for stock was made to include a mortgage for the repayment of stock loans. These acts of mortgage were thus double obligations with one obligor, but two distinct obligees. And this court decided in the case of *Meeker* v. *Clinton and Port Hudson Railroad Co.*, 2 An. 971, that the two hypothecations were of unequal rank; *that* for the security of the stock, taking effect from the date of subscription; while *that* for the security of stock loans, only dated from the time of borrowing. In that case it was held, that a Sheriff's sale in a proceeding upon a stock loan was null, unless the price was sufficient to cover the older, or stock, mortgage. But we have seen that in the sale of 1843, at which this appellant became the purchaser, this difficulty was obviated by his assumption of the stock mortgage, that being the mortgage mentioned in the certificate read by the Sheriff at the sale, and which is in evidence. Neither can the defendant

any more than the warrantor pretend ignorance of the existence of this incumbrance on the property at the time of the conveyance by the latter to the former. For it is mentioned and made the subject of a special warranty, in his act of sale.

The judgment appealed from is, therefore correct, as between the plaintiff and defendant; and we have next to examine that between the defendant and the warrantor.

The verdict of the jury is without doubt correct, so far as regards the restitution of the price of sale. But we are not satisfied that the large allowance made for improvements, is justified by the record. These improvements consist of a gin-house, outhouses, fences and repairs to dwelling-house.

This court in 16th La. Rep. 421, and in 12th Robinson, 255, construed the Article 2485 of the Civil Code, as giving the right to the evicted possessor to recover of his warrantor, only the *increased* value given to the premises by the improvements. And in the case of *D'Aquin* v. *Coiron*, 3 La. 398, ordinary repairs, necessary for the enjoyment and cultivation of the property, are not improvements, the cost of which the vendor is bound to reimburse to his vendee. We notice, moreover, that the witnesses gave their testimony upon the trial of this case, on the 24th April, 1858, five years and-a-half after the sale from *Smith* to *Harbour*, and that the land has been cultivated by defendant as a cotton plantation during the whole of this time. The so styled improvements proved are nothing more than what were obviously, most strictly necessary for carrying on the plantation and securing the crops. And we do not view it as either legal or equitable, that the warrantor who sold to a purchaser with notice of an incumbrance, and who has been paid but a small portion of the price for which he sold, should pay the expenses, or any portion of the expenses, of making six crops upon the land sold, without receiving any benefit from those crops. C. C. Art. 2531, paragraph 2; *Yeatman, Woods & Co.* v. *Erwin*, lately decided.

It is, therefore, adjudged and decreed, that the judgment of the District Court as between plaintiff and defendant, be affirmed; that as between defendant and warrantor it be reversed; that the defendant, *John A. Harbour*, recover of the warrantor, *Gordon A. Smith*, one thousand dollars; that the said *Smith* restore to said *Harbour* the two notes of one thousand dollars each, described in the answer; and that the costs of the District Court be paid by the warrantor, those of appeal one-half by warrantor and one-half by defendant.

MERRICK, C. J., recused himself in this case.